**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER KAINZ, SARA BAILEY, REBECCA BUCZKOWSKI, and SABRINA FOX, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 21-cv-03239 |
| ILLINOIS DEPARTMENT OF CORRECTIONS; ROB JEFFREYS, in his Individual Capacity and Official Capacity as Acting Director of the Illinois Department of Corrections; LEONTA JACKSON, in his Individual Capacity and Official Capacity as the Warden of Pontiac Correctional Center; TERI KENNEDY, former Warden, in her Individual Capacity; EMILY RUSKIN, former Warden, in her Individual Capacity; KELLY RENZI, in her Individual Capacity and Official Capacity as the IDOC Psychology Administrator; JOHN SOKOL, in his Individual Capacity and Official Capacity as Site Mental Health Services Director; and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Magistrate Judge **JURY TRIAL DEMANDED CLASS ACTION COMPLAINT** |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs Heather Kainz, Sara Bailey, Rebecca Buczkowski, and Sabrina Fox, on behalf of themselves and a class of similarly situated persons, by and through their attorneys, hereby complain against the Defendants Illinois Department of Corrections; Rob Jeffreys, in his individual capacity and official capacity as Director of the Illinois Department of Corrections ("IDOC"); Leonta Jackson in his individual capacity and official capacity as the Warden of Pontiac Correctional Center; Teri Kennedy, former Warden, in her individual capacity; Emily Ruskin, former Warden, in her individual capacity; Kelly Renzi, in her individual capacity and

official capacity as the IDOC Psychology Administrator; John Sokol in his individual and

official capacity as Site Mental Health Services Director; and Wexford Health Sources, Inc., as

follows:

## Nature of the Action

### Rampant ongoing male inmate masturbation and sexual harassment targeting female medical and mental health staff

1.  No woman should have to work in an environment where she is forced to endure

exposure to masturbation and other unacceptable vulgarities and sexual harassment on a regular

basis as a term and condition of employment. No woman should be told to expect to be

masturbated at in the workplace and then to be blamed for it and told to deal with it on her own.

That is the unfortunate and illegal environment that Plaintiffs and the putative class are subjected

to at the Pontiac Correctional Center ("Pontiac prison").

2.  Plaintiffs Heather Kainz, Sara Bailey, Rebecca Buczkowski, and Sabrina Fox

(hereafter "Plaintiffs and/or Class Representatives") bring this class action complaint against

Defendants for subjecting female medical and mental health employees of the Illinois

Department of Corrections (IDOC) and Wexford Health Sources, Inc. (Wexford) to a continuing

severe and/or pervasive hostile work environment on the basis of sex at the Pontiac prison, in

violation of the Equal Protection clause of the Constitution of the United States, under the Civil

Rights Act of 1866, as amended, 42 U.S.C. § 1983 and § 1988; Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and the Illinois Civil Rights Act, 740 ILCS 23/1

*et seq.*

3.  As set forth herein, Defendants have knowingly created, fostered, and tolerated an

environment in the Pontiac prison whereby male inmates have intentionally exposed their

penises and masturbated at and/or on Plaintiffs and other female medical and mental health

2

employees throughout the prison, including the galleries, cells, recreation yards, therapy and treatment rooms, and infirmary. This sexual harassment, which occurs on a near-daily basis, is often perpetrated by certain inmates, and it has been an ongoing and escalating issue for Plaintiffs and the putative class for at least the past three years.

4.      The sexual harassment to which female medical and mental health employees are subjected to is egregious. Male inmates routinely expose their penises, often erect, to Plaintiffs and the putative class; intentionally masturbate at and/or on them, at times in groups and at times aiming their ejaculations toward them; and subject them to sexualized epithets, comments, insults, taunts, gestures, and threats to commit sexual violence against them.

5.      The inmates' sexual conduct and sexually harassing statements are targeted toward female employees because of their sex. Male employees are not similarly targeted by the male inmates.

6.      Plaintiffs and the putative class have been subjected to thousands of intentional penis exposures and acts of masturbation by the male inmates at the Pontiac prison.

**Defendants' actions, policies, practices, procedures, and deliberate indifference have encouraged and caused inmate indecent exposure and masturbation attacks against female employees.**

7.      Defendants' actions, policies, procedures, and deliberate indifference, individually and in concert, have encouraged an environment to flourish whereby male inmates brazenly and routinely engage in indecent exposure of their genitals and masturbation attacks, often done together with sexual comments, taunts, and threats, intentionally and specifically targeting Plaintiffs and the putative class.

8.      Defendants have knowingly implemented official and *de facto* policies and practices which have caused the frequency and severity of these attacks to increase.

9.    Defendants' affirmative conduct that has encouraged and created the hostile work

environment includes:

   a.   Defendants have chosen to provide no information, training, policies,
        procedures, guidelines, or standards to staff for dealing with sexual
        harassment by inmates in a consistent manner. Instead, it is Defendants'
        policy and practice to require Plaintiffs and the putative class to attempt to set
        their own boundaries and limits with inmates on an individual and *ad hoc*
        basis. Defendants know and/or should know that this policy is ineffective in
        deterring sexual harassment from inmates directed at Plaintiffs and the
        putative class.

   b.   Defendants have chosen to provide no training to Plaintiffs and the putative
        class on how to effectively manage or prevent the ongoing inmate indecent
        exposure and masturbation attacks. Defendants know and/or should know that
        inmate indecent exposure and masturbation attacks directed at Plaintiffs and
        the putative class are rampant.

   c.   Defendant IDOC deviates from its written rules and permits male inmates to
        be partly undressed in the recreation yard, which allows them to have quick
        access to expose their penises and masturbate at Plaintiffs and the putative
        class as they are forced to walk past the recreation yard in the course of their
        work.

   d.   Defendants require mental health employees to conduct assessments and
        evaluations of male inmates at cell-front, during which times Plaintiffs and the
        putative class are frequently subjected to penis exposure and masturbation
        attacks by nearby inmates, often accompanied by sexual taunts, epithets, or
        threats.

   e.   Defendants have chosen not to provide a procedure or mechanism for
        Plaintiffs or the putative class to report male inmate sexual harassment other
        than to write disciplinary tickets. Defendants know and/or should know that
        writing tickets is ineffective to prevent penis exposure and masturbation
        attacks. Defendants know and/or should know that inmate discipline evolving
        out of disciplinary tickets exacerbates inmates' penis exposure and
        masturbation attacks.

   f.   Defendants know and/or should know that requiring female employees to
        walk past one of the yards where inmates expose themselves will subject them
        to inmates exposing themselves, masturbating at, and yelling sexually explicit
        threats, slurs, and comments at them.

g.  Defendants' ongoing affirmative policy and/or practice of imposing segregation time as a punishment for the male inmates' sexual harassment does not prevent such attacks and instead often exacerbates behavioral issues and increases such attacks against Plaintiffs and the putative class.

h.  Defendants have chosen to have no policy or procedure for documenting, monitoring, investigating, or responding to sexual harassment by male inmates against Plaintiffs and the putative class.

i.  Defendants have chosen to not integrate the prohibition of sexual harassment into inmates' treatment plans, for the purpose of preventing the sexual harassment, or if appropriate, to impose appropriate deterrent steps or consequences.

j.  Defendants have fostered a climate which has discouraged Plaintiffs and the putative class from reporting sexual harassment by male inmates against them.

k.  Defendants have fostered a climate whereby instead of taking steps to prevent a sexually hostile work environment, they blame Plaintiffs and the putative class for being employed at the Pontiac prison.

10.     By virtue of the above-described widespread policies and practices, Defendants have sent a clear message to male inmates that they are free to commit intentional penis exposure and masturbation attacks against Plaintiffs and the putative class and that they will face no consequences or effective remedies to stop the behaviors.

11.     In stark contrast, male inmates' attacks that affect primarily male employees, such as other kinds of attacks, are addressed promptly and effectively.

12.     Defendants' actions have interfered with and altered the terms and conditions of Plaintiffs' and the putative class's ability to perform their jobs.

13.     As a result of Defendants' actions, Plaintiffs and the putative class have been and continue to be subjected to a hostile work environment that caused and continues to cause them damages, including but not limited to economic losses for wage loss (past and future), loss of benefits (past and future), out-of-pocket expenses, and past, present, and future physical and emotional injuries.

14. In addition to the damages Plaintiffs and the putative class seek, they also seek a judgment enjoining Defendants' conduct and declaring the Defendants' conduct unconstitutional and violative of Title VII and the Illinois Civil Rights Act, as set forth below.

**Jurisdiction and Venue**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §1983. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a).

16. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because Defendants IDOC and Wexford reside in this District. IDOC maintains an office at 100 W. Randolph, Chicago, IL. On information and belief, as Director of IDOC, Defendant Jeffreys maintains an office at the IDOC office in Chicago. Wexford operates and provides correctional health care services within this jurisdiction.

**The Parties**

17. Plaintiff Heather Kainz, a woman, resides in Illinois and has been employed jointly by Wexford and IDOC as a Mental Health Professional at the Pontiac prison from approximately June 2016 to January 2020 and is currently employed at the Stateville Correctional Center ("Stateville prison"). She is licensed by the State of Illinois as a Licensed Clinical Professional Counselor.

18. Plaintiff Sara Bailey, a woman, resides in Illinois and was employed jointly by Wexford and IDOC as a Mental Health Professional at the Pontiac prison from approximately May 2017 to January 2020 and was previously employed at the Stateville prison from approximately May 2014 to December 2016. She is licensed by the State of Illinois as a Licensed Clinical Professional Counselor.

19.     Plaintiff Rebecca Buczkowski, a woman, resides in Illinois and has been employed by IDOC since approximately 1997 and at the Pontiac prison since approximately May 2014 to present as a Correctional Nurse. She is licensed by the State of Illinois as a Licensed Practical Nurse (LPN).

20.     Plaintiff Sabrina Fox, a woman, resides in Illinois, and has worked at the Pontiac prison since approximately 2015, initially with Wexford and IDOC, and then with IDOC since approximately September 2017 to present. She is licensed by the State of Illinois as a Registered Professional Nurse (RN).

21.     Defendant IDOC is an agency organized under the laws of the State of Illinois. IDOC operates and has authority over correctional facilities in Illinois, including Pontiac prison.

22.     Defendant Rob Jeffreys ("Jeffreys") is the Director of IDOC, and as such has administrative and supervisory authority over the operation of all correctional facilities in the State of Illinois, including the Pontiac prison, and is responsible for promulgating and implementing IDOC's policies, procedures, rules, and regulations. Defendant Jeffreys has final policy making authority for IDOC. Defendant Jeffreys is sued in his individual and official capacities.

23.     Defendant Leonta Jackson ("Jackson") is the Warden at Pontiac prison, and as such has administrative and supervisory authority over the operation of that facility and is responsible for promulgating and implementing IDOC's and Pontiac prison's policies, procedures, rules, and regulations. Defendant Jackson has final policy making authority for IDOC and Pontiac prison. Defendant Jackson is sued in his individual and official capacities.

24.     Defendant Teri Kennedy ("Kennedy") was the Assistant Warden and/or Warden at Pontiac prison at all relevant times, and as such had administrative and supervisory authority

over the operation of that facility and was responsible for promulgating and implementing

IDOC's and Pontiac prison's policies, procedures, rules, and regulations. Defendant Kennedy

had final policy making authority for IDOC and Pontiac prison. Defendant Kennedy is sued in

her individual capacity.

26. Defendant Emily Ruskin was the Assistant Warden at Pontiac prison at all

relevant times, and as such was responsible for promulgating and implementing IDOC's and

Pontiac prison's policies, procedures, rules, and regulations. Defendant Ruskin had final policy

making authority for IDOC and Pontiac prison. Defendant Ruskin is sued in her individual

capacity. Upon information and belief, Defendant Ruskin was recently terminated by Defendant

IDOC.

26. Defendant Kelly Renzi ("Renzi") is the IDOC Psychology Administrator and the

Mental Health Director of Pontiac prison, and as such has supervisory authority over mental

health employees of IDOC and Wexford. Defendant Renzi is sued in her individual and official

capacities.

27. Defendant John Sokol ("Sokol") is the Wexford Mental Health Services Director

at Pontiac prison, and as such has supervisory authority over mental health employees of IDOC

and Wexford. Defendant Sokol is sued in his individual and official capacities.

28. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation conducting

business in the State of Illinois, in this District, and is headquartered in Pennsylvania. Wexford is

one of the largest correctional health care companies in the country. Pursuant to its contract with

the State of Illinois, it provides medical and mental health services at IDOC correctional

facilities, including Pontiac prison.

29.     Wexford has contracted with the State of Illinois to perform the governmental

function of providing inmates with health care on behalf of the State. IDOC and Wexford have a

long-term contractual relationship that extends back to 1992. IDOC has delegated to Wexford

authority and responsibility for staffing constitutionally required mental health services to

inmates in the control and custody of IDOC.

30.     IDOC, through its relationship with Wexford and as a joint employer, has

exercised significant control over the terms and conditions of employment of Ms. Kainz, Ms.

Bailey, and their Wexford colleagues. By way of example, Wexford employees are subject to

and must comply with all administrative, security, and institutional rules, regulations, policies,

procedures, and other directives of IDOC and IDOC staff at Pontiac prison and as such are joint

employees of IDOC and Wexford.

31.     IDOC and Wexford jointly employ, manage, and control employees of Wexford

who work at IDOC correctional facilities, including Pontiac prison.

**This Action is Brought as a Class Action**

32.     Plaintiffs bring this class action on behalf of themselves and on behalf of others

similarly situated, under Fed. R. Civ. P. 23(a) and (b)(2), seeking equitable and injunctive relief,

and under Fed. R. Civ. P. 23(a) and (b)(3) seeking damages on behalf of the following class:

> All current and former female medical and mental health employees who work for
> or have worked for Wexford and/or IDOC at any time during the period from
> June 23, 2018, through the present for all claims under Title VII and from June
> 16, 2019 for all claims under Section 1983 and the ICRA and who work at
> Pontiac prison or will be required to work at Pontiac prison.

(the "Class").

33.     *Numerosity/Impracticability of Joinder*: The members of the Class are so

numerous that joinder of all members would be unfeasible and impractical. Named Plaintiffs are

informed and believe, and on that basis allege, that there are more than 50 persons within the Class. Further, throughout the relevant time period, IDOC and Wexford have had ongoing employee turnover, and thus the Class is likely geographically dispersed so as to make joinder impracticable. The exact number of female employees in the Class will be readily ascertainable via inspection of Defendants IDOC's and/or Wexford's records and other documents maintained by Defendants IDOC and/or Wexford or by other methods during discovery.

34.     *Commonality and Predominance*: Common questions of law and fact exist as to all members of the putative Class and the Plaintiffs and the putative Class have a commonality of interest in the subject matter of this suit and the remedy sought. Defendants' discriminatory policies and practices were generally applicable to all members of the Class, thereby making a class action superior to other forms of action. Such common questions of law and fact predominate over the variations, if any, which may exist and include, but are not limited to:

  i. Are the Plaintiffs and the Class they seek to represent "employees" as defined by Title VII?

  ii. Are the Plaintiffs and the Class they seek to represent members of a protected Class based on their sex as defined by Title VII?

  iii. Did Plaintiffs and the Class suffer injury or damage as a result of Defendants' policies and procedures regarding prison inmates' indecent exposure, masturbation attacks, sexual assault and/or other acts of sexual harassment?

  iv. Did male inmates' indecent exposure, masturbation attacks, and sexually offensive verbal threats and commentary create a sexually hostile work environment?

  v. Have Defendants have been on notice of Plaintiffs and the Class' sexually hostile work environment?

  vi. Have Defendants been on constructive notice of Plaintiffs and the Class' sexually hostile work environment?

  vii. Have Defendants have taken measures reasonably calculated to curtail the inmates' sexual harassment of Plaintiffs and other members of the Class?

viii.    Have Defendants taken prompt and appropriate remedial actions to redress the inmates' sexual harassment of Plaintiffs and other members of the Class?

ix.    Are Defendants IDOC and Wexford joint employers?

x.    Have Defendants failed to promulgate policies and procedures prohibiting inmates' sexual harassment, masturbation attacks, and indecent exposure in violation of the Equal Protection provisions of the Constitution of the United States?

xi.    Is Defendants' callous blaming of Plaintiffs and the Class for choosing to work in the profession of correctional medical and mental health care is a valid legal defense to Plaintiffs' claims?

xii.    Are Defendants liable for a hostile work environment caused by third parties, inmates, when Defendants are aware of sexual harassment and fail to take steps reasonably designed to stop it?

xiii.    Is the sexually and sex-based offensive conduct severe and/or pervasive, and does it alter the conditions of employment Plaintiffs and members of the Class?

xiv.    What are the appropriate injunctive and related equitable relief for the Class?

xv.    What is the appropriate Class-wide measure of damages for the putative Class?

35.    *Typicality*: The Named Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all the members of the putative Class lass have experienced indecent exposure, masturbation attacks, and/or other sexual harassing conduct by prison inmates that has created a sexually hostile work environment and have been injured by the same wrongful practices of Defendants. Named Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories. Named Plaintiffs will fairly and adequately represent the interests of the Class because Named Plaintiffs are members of the Class, and because Named Plaintiffs do not have any interest that is contrary to or in conflict with those of the Plaintiff Class. There is a well-defined

community of interest in the questions of law and fact affecting the Class of persons that Named Plaintiffs represent as a whole. Each member of the Class was subjected to Defendants' illegal practices.

36. *Superiority*: A class action is superior to any other form of action for the fair and efficient adjudication of this lawsuit. Individuals such as Plaintiffs have a difficult time prosecuting an individual action against Defendants, who are governmental entities or employed by governmental entities with tremendous economic resources. Even if any Class member could afford individual litigation against Defendants, it would be unduly burdensome to the court system. Individual litigation of such numerous claims magnifies the delay and expense to all parties and the court system. By contrast, a class action presents far fewer management difficulties and affords the benefits of unitary adjudication, economics of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual Class members and judicial consistency in rulings. Notice of the pendency and any resolution of this action can be efficiently provided to Class members by mail, print, broadcast, internet, and/or multimedia publication. Requiring each Class member to both establish individual liability and pursue an individual remedy would discourage the assertion of lawful claims putative Class members who would be disinclined to pursue an action against them for fear of retaliation. Proof of a common practice or factual pattern, which the Named Plaintiffs were subjected to, is representative of the business practice or factual pattern to which the alleged Class was subjected to and will establish the right of each of the members of the alleged Class to recoveries on the claims alleged herein. The prosecution of separate actions by individual Class members, even if possible, would create: (a) a substantial risk of inconvenient or varying verdicts or adjudications with respect to the individual

Class members against the Defendants herein; and/or (b) legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the other Class members not parties to the adjudications or which would substantially impair or impede the ability of Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class action.

37.     *Adequacy*: The named Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained Class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interest contrary to or in conflict with the Class.

38.     The Plaintiffs do not anticipate any difficulty in the management of this litigation.

39.     Defendants have access to email or other contact information for the individual members of the Class, which may be used for the purpose of providing notice of the pendency of this action.

40.     Plaintiffs request permission to amend the complaint to include other individuals as Class representatives if any of the Plaintiffs are deemed not to be an adequate representative of the Class.

41.     Plaintiffs further request permission to amend the complaint to revise the Class definition as appropriate after discovery.

**General Fact Allegations Applicable to all Counts**

**Plaintiffs are female civilian employees who provide medical and mental health services to male inmates inside the Pontiac prison**

42.     Pontiac prison is a maximum-security prison and houses an average daily population of approximately 2,000 male inmates.

43.     Plaintiffs and the putative Class are female civilian employees who provide direct medical care and mental health services to the inmates at Pontiac prison.

44.     The vast majority of Defendants' current and former medical providers and mental health employees are female, including but not limited to the following employees in the following positions: Correctional Nurse, Nurse Practitioner (NP), Registered Nurse (RN), Licensed Practical Nurse (LPN), Certified Medical Technician (CMT), Clinical Psychologist, Physician's Assistant (PA), Mental Health Professional (MHP), Behavioral Health Technician (BHT), and Recreational Therapist (RT).

45.     Plaintiffs and the putative Class work, or worked, directly with the Pontiac prison inmates. Their duties and responsibilities include providing individual counseling, group therapy sessions, and activity-based programs with inmates; going to the prison cell houses and distributing medications, responding to sick calls, and performing cell-front assessments and evaluations, segregation rounds, and crisis watches; and providing and assisting in inmate patient care in the cell houses and infirmary.

46.     Plaintiffs and putative Class members also regularly encounter inmates in other areas of the prison, for example, when the inmates are out of their cells or in the recreation yard.

14

**Plaintiffs are repeatedly targeted for penis exposure and masturbation attacks while carrying out their job responsibilities**

47.     The named Plaintiffs and other similarly situated female medical and mental health employees have been repeatedly and increasingly subjected to regular and repeated incidents of penis exposure and masturbation attacks by male inmates throughout the prison. Many of the incidents occur in the South Mental Health Unit and West Cell House, and the recreation yards in these units.

48.     Male inmates regularly expose their penises to Plaintiffs and the putative Class, and/or masturbate at them and/or on them while staring at them, calling out to them, or otherwise trying to engage their attention. This sexually offensive conduct is severe and/or pervasive and happens frequently and at times, on a daily basis to female employees in the putative Class.

49.     The inmates' pervasive penis exposure, masturbation, and sexually explicit comments directed at Plaintiffs and the putative Class and have worsened over time.

50.     The incidents of penis exposure and masturbation intentionally and specifically target Plaintiffs and the putative Class, and are not inadvertent, unintentional, or private conduct by male inmates. The conduct complained of herein is directed toward Plaintiffs and the putative Class due to their sex, female. Male employees are not similarly targeted for penis exposure, masturbation, or sexually explicit comments.

51.     Defendants knew or should have known that their female medical and mental health employees have been and continue to be victims of sexual harassment, by male inmates, including penis exposure and masturbation. Defendants deliberately failed to take any reasonable, prompt, or effective remedial action to stop the misconduct. Defendants have taken affirmative action that has made the hostile environment worse.

15

52.     As described below, the complained of conduct is offensive, degrading, and unwelcome. As a result, Plaintiffs and the putative Class have suffered, and continue to suffer, a hostile work environment and have been discriminated against based on and because of their sex, female.

**The Named Plaintiffs have suffered repeated incidents of sexual harassment including penis exposure and masturbation attacks by inmates**

*Plaintiff Heather Kainz*

53.     From at least two years preceding the filing of this Complaint and at least 300 days before the filing of her EEOC charge, Ms. Kainz has been subjected to numerous instances of intentional indecent penis exposure and masturbation attacks by male inmates. Inmates have exposed their penises and masturbated at and/or on her during individual counseling sessions, in group therapy sessions, in the galleries, and when she has walked past the recreation yard.

54.      By way of example, in January 2019, while she was on a gallery to perform crisis watches, a naked inmate in one cell threw a liquid substance all over her from her face to her feet, while a second naked inmate in a nearby cell stared and masturbated at her.

55.     Prior to the January 2019 incident, Ms. Kainz had asked her immediate supervisors, Defendants Renzi and Sokol, on multiple occasions for a reassignment to another area or caseload to avoid being sexually harassed. Defendant Renzi and Sokol were dismissive of her complaints and refused to reassign her.

56.     In April 2019, Ms. Kainz was directed to perform an assessment of an inmate at his cell. She was unable to complete the assessment because a group of approximately nine inmates were screaming sexual taunts such as "I can see your pussy," "I've been wanting to fuck you for weeks," and other sexual epithets so loudly that she could not hear or communicate with the inmate she was trying to assess.

57.     In or about late January/early February 2020, Ms. Kainz was forced to transfer away from Pontiac prison because of the ongoing sexual harassment and Defendants' failure to take any prompt or effective remedial action to prevent the sexual harassment.

*Plaintiff Sara Bailey*

58.     From at least two years preceding the filing of this Complaint and at least 300 days before the filing of her EEOC charge Ms. Bailey was subjected to numerous instances of intentional indecent penis exposure and masturbation attacks by male inmates throughout her employment.

59.     Frequently when Ms. Bailey went to a gallery to perform cell-front assessments, inmates stood naked or with their penises hanging out of their boxer shorts, and/or sticking their exposed penises through openings in their cells, often calling out to her to look at their genitals. When she stopped in front of a cell to perform an assessment, the inmates in the adjacent cells often positioned themselves directly in her line of sight, exposed their genitals and masturbated in her direction.

60.     In or about the fall of 2017, Ms. Bailey received a letter from an inmate containing pornographic and offensive descriptions of what he wanted to do to her. Plaintiff Bailey's male supervisors joked about the letter, made fun of her, and took no action to remediate the inmate's sexual harassment. An IDOC lieutenant stated that he "had to smoke a cigar" after reading the sexual letter about her.

61.     Inmates exposed their penises and masturbated at Ms. Bailey during individual counseling, in group therapy sessions, and when she walked past them in the recreation yard.

62.     On or about January 2020, Ms. Bailey was forced to resign her employment because of the ongoing sexual harassment and Defendants' failure to take any prompt or effective action to prevent the sexual harassment.

*Plaintiff Rebecca Buczkowski*

63.     From at least two years preceding the filing of this Complaint and at least 300 days before the filing of her EEOC charge, Ms. Buczkowski has been subjected to numerous instances of intentional indecent penis exposure and masturbation attacks by male inmates.

64.     Frequently, when Ms. Buczkowski arrives at a gallery, one of the inmates typically yells out her name or yells "pussy on the gallery" to alert the other inmates that a female is on the gallery.

65.     Although a correctional officer escorts her to the gallery, inmates expose their genitals and masturbate, often calling out to Ms. Buczkowski to look at their genitals. When she stops in front of a cell, the inmates in the adjacent cells almost always position themselves directly in her line of sight, exposing their genitals and masturbating in her direction.

66.     On numerous occasions, the inmate she has come to meet with also has exposed his genitals and/or masturbated in her direction.

*Plaintiff Sabrina Fox*

67.     Ms. Fox been subjected to hundreds, if not thousands, of incidents of intentional indecent penis exposure and masturbation attacks by inmates during her time as a nurse at Pontiac prison, including from at least two years preceding the filing of this Complaint and at least 300 days before the filing of her EEOC charge.

68.     By way of example, during the summer of 2019, an inmate masturbated and ejaculated toward her. His semen dripped down the clear plexiglass door of his cell while she

was standing in front of his cell giving him his medication.

69.     Also, in approximately May or June 2019, an inmate thrust his penis through the opening in his cell door where Ms. Fox had placed his medications. The inmate wagged his exposed penis at her.

70.     Inmates have exposed their genitals to Ms. Fox in the infirmary while she was providing nursing care. For example, on one occasion in or about late 2018, while she was dressing an inmate's wound, another inmate was masturbating with his penis exposed and shouting "look at my dick" and trying to interfere with her care of the other inmate.

71.     Since approximately 2019, Ms. Fox has been required to work two of her regularly scheduled 12-hour shifts in the South Mental Health Unit. She has been repeatedly subjected to inmates' exposing their penises to her and masturbation attacks by inmates in that unit.

72.     IDOC has rarely, if ever, scheduled a male nurse to work in the South Mental Health Unit.

73.     In response to Ms. Fox's complaints about the masturbation and exposure and the stress it caused her, IDOC officials and supervisors have told her that she should quit, including the following:

- in approximately 2018, a lieutenant told her "maybe you should just leave";
- in or about December 2018, Defendant Ruskin suggested that Ms. Fox leave her job;
- in or about December 2018, Administrator Kelly Lawshea told her "this is probably not a good" job or fit for her;
- in the fall of 2020, Health Care Administrator Ginger Davis told her that it was "time to move on"; and
- in late 2020 or early 2021, Director of Nursing Nikki Rambo told her "maybe it's time for you to find a new job."

19

**Female medical and mental health employees endure penis exposure and masturbation attacks while carrying out their job responsibilities**

*Interactions during medical and mental health treatment*

74.    Male inmates frequently expose their penises and/or masturbate at or on female mental health employees during individual (one-on-one) counseling sessions, group therapy sessions, and activity-based group programming, or during the provision of medical treatment to inmates, like the incidents suffered by the Class representatives described above.

*Cell house galleries*

75.    The Plaintiffs and the putative Class are all required to walk along the narrow corridors of the galleries where cells are located to perform their responsibilities. As they navigate through the galleries, they often encounter a gauntlet of exposed erect penises thrust through cell openings as the inmates engage in masturbation, while calling out to them to look at their genitals. As Plaintiffs and members of the putative Class enter a gallery, an inmate usually calls out to the other inmates that a female is on the gallery.

76.    Plaintiffs and members of the putative Class carrying out their responsibilities on a gallery have been subjected to multiple inmates masturbating at them at the same time with impunity.

*Cell front*

77.    When Plaintiffs and members of the putative Class stop at a cell to perform an assessment of an inmate, respond to a call, or carry out other duties at the cell front, the inmates in adjacent and nearby cells frequently expose their penises and masturbate at them with impunity, often while the inmate with whom the female employee is speaking stalls her to keep her there for as long as possible for the benefit of his masturbating neighbors.

*The Yard*

78.     During the workday, Plaintiffs and members of the putative Class must walk past the outdoor recreation area for inmates known as the "yard." Often the inmates are partly undressed, with their jumpsuits down around their waist or hips, allowing quick access to their genitals. When Plaintiffs and members of the putative Class walk past the yard, the inmates in the yard scream explicit sexual comments and taunts at the women, expose their genitals and/or masturbate at them, with impunity.

**Defendants' knowledge of sex harassment, penis exposure and masturbation attacks by inmates against female employees**

79.     Defendants knew and/or should have known of the escalating and egregious problem of indecent penis exposure and masturbation attacks by inmates against Plaintiffs and the putative Class for at least two years.

80.     IDOC and Wexford administration and supervisors, including Dr. Kelly Renzi and Dr. John Sokol, have told Plaintiffs and the putative Class to expect and accept indecent penis exposure and masturbation attacks by inmates against Plaintiffs and the putative class.

81.     IDOC wardens and administrators, including Defendant Emily Ruskin, have directly expressed deliberate and intentional indifference to Plaintiffs and the putative Class, stating that there is nothing they can do about the indecent penis exposure and masturbation attacks by inmates against Plaintiffs and the putative class, and telling Plaintiffs and the putative Class to quit writing tickets while simultaneously requiring them to stand at the cell front and not walk away even if an inmate was masturbating.

82.     Despite Defendants IDOC's and Wexford's knowledge about inmates' sexual harassment of Plaintiffs and the putative Class, including genital exposure, masturbation at and/or on the women and sexual comments, Defendants IDOC and Wexford failed and continue

21

to fail to provide to Plaintiffs and the putative Class any policies, procedures, training, or information that specifically address issues of sexual harassment by inmates and how to deal with, manage, or prevent such sexual harassment.

83. Instead, Defendants IDOC's and Wexford's policy and practice for each Plaintiff and members of the putative Class is for each of them to set their own boundaries and limits with inmates on an individual and *ad hoc* basis placing Plaintiffs and the putative Class in increasingly detrimental and vulnerable situations.

84. Defendant Renzi has told Plaintiffs and the putative Class, in response to their complaints of sexual harassment, that they need to "have better boundaries" and "set limits" with the inmates.

85. As an example of Defendants' reckless indifference and failure to provide training, at a meeting in February 2019, Ms. Bailey reported to Defendants Renzi and Sokol that she was uncomfortable standing in front of a cell trying to carry out her assessment while that inmate or other inmates were masturbating at her. She told Defendants that she did not want to spend 15 minutes standing there being masturbated at by one or more male inmates. In response, Dr. Renzi told Ms. Bailey in the presence of putative Class members, that they had to stay at the cell-front for at least 15 minutes, thereby specifically requiring female employees to endure indecent exposure and masturbation attacks during the performance of their duties.

86. Defendant Renzi discouraged Plaintiffs and the putative Class from documenting the inmates' sexually inappropriate behavior in their notes, stating in about February 2019 that it "would be inappropriate to document" the inmates' sexual misconduct. Dr. Renzi told to Plaintiffs and members of the putative Class that it is up to them to "set limits" with the inmates.

22

87.     In about March 2019, Defendant Renzi verbally reprimanded a female mental health professional for assisting a new female coworker with a crisis watch of a certain inmate who had sexually harassed her. Dr. Renzi criticized her for "blowing the situation out of proportion" and stated that the new female employee was "supposed to set boundaries."

### Sexual harassment is both pervasive and severe and it is made worse by a lack of prompt appropriate remedial measures

88.     The inmates' masturbation attacks described herein continue to be perpetrated against female employees on a regular and sometimes daily basis and through the present.

89.     The only procedure Defendants have in place for Plaintiffs and members of the putative Class to report inmate sexual harassment is to write disciplinary tickets against the inmates.

90.     Defendants know or should have known that writing tickets is ineffective to prevent inmates' intentional indecent exposure, masturbation attacks, and other acts of sex harassment and, in fact, further exposes female employees to masturbation attacks, indecent penis exposure, and sex harassment.

91.     Disciplinary tickets have been frequently dismissed. Defendants' disciplinary measure of placing the offending inmate into segregation (solitary confinement) does not prevent ongoing indecent exposure or masturbation attacks but increases it.

92.     Policymakers and supervisors, including Assistant Wardens, have discouraged Plaintiffs and the Class from writing disciplinary tickets documenting inmate sex harassment, masturbation attacks, and indecent exposure.

93.     To submit disciplinary tickets, female employees must walk them to the shift commander's station. To reach this station, they must walk past one of the yards where inmates expose themselves to, masturbate at, and yell sexually explicit threats, slurs, and comments at

female employees thereby subjecting Plaintiffs and the putative Class to additional sexual harassment.

94.     Defendant Renzi directed Plaintiffs and the putative Class to submit disciplinary tickets individually throughout the workday as soon as they wrote a ticket, rather than together at the end of the work shift or when inmates are not in the yard. Defendants' policy often caused them to endure additional sexual harassment in order to report sexual harassment, or other violations.

95.     As a result of Defendants' failure to take meaningful action to stop the sex harassment, penis exposure and masturbation attacks, inmates have become more emboldened to expose their penises and masturbate at Plaintiffs and members of the putative Class.

96.     Defendants have multiple available options to remediate the sexual harassment and hostile work environment, but they choose not to employ those remedial options.

97.     Defendants knowingly failed and refused to take steps to prevent inmates from masturbating at and sexually harassing the Plaintiffs and the putative Class, failed to provide appropriate treatment and/or consequences in response to the inmates' sexual misconduct, thereby giving the inmates an incentive to continue such conduct, to the detriment of Plaintiffs and the putative Class.

98.     Further, there is not enough time in the workday or support from the administration for Plaintiffs and the putative Class to perform their job duties and to write a disciplinary ticket for every incident of indecent exposure, masturbation or other sexual harassment that occurs on a near-daily basis at Pontiac prison.

99.     Defendants have no other policy or procedure for documenting, monitoring, investigating, or responding to sexual harassment by inmates, imposing appropriate

consequences, or, if appropriate, integrating sexual harassment training and prohibition into treatment plans.

100.    Defendants' policies and practices and affirmative conduct have created and continue to foster a climate which has discouraged Plaintiffs and members of the putative Class from reporting sexual harassment by inmates.

**In contrast, Defendants have responded decisively to inmates' attacks on male employees**

101.    Male supervisors routinely joke about the inmates' masturbation attacks on female employees.

102.    Male supervisors do not joke about non-masturbation attacks on male employees and treat those attacks in a serious manner.

103.    Defendants encourage writing up reports of inmates' who spit at staff, but in contrast discourage Plaintiffs and the putative Class from writing up reports of inmates' masturbation attacks, genital exposure, and other forms of sexual harassment as detailed in this Complaint.

104.    In contrast to their response to Ms. Kainz's request to be transferred due to the sexual harassment, before and after the January 2019 incident described above, Defendants IDOC and Wexford promptly granted the request of a male employee, an MHP, to transfer to another unit after a male inmate spit on and/or at him.

105.    Similarly, in or about summer of 2019, when a male sergeant, got into a physical altercation with an inmate in North House, which was his regularly assigned area, he was immediately transferred to another location and did not have to return to North House.

106.    On information and belief, in 2019, IDOC immediately transferred a male sergeant out of the unit where he was subjected to a non-masturbation attack by an inmate, while

requests to transfer by female employees due to repeated inmate masturbation attacks were denied.

**Plaintiffs have suffered and continue to suffer significant damages**

107.    As a result of the longevity, increasing severity, pervasive and widespread nature of the egregious sexual harassment, Plaintiffs and the putative Class live with constant and deeply rooted feelings of dread, apprehension, and/or fear that a sexual assault or battery will occur when they treat or encounter male inmates.

108.    As a result of the Defendants' affirmative conduct and deliberate inaction and indifference the Plaintiffs and the putative Class have suffered and continue to suffer a barrage of attacks because of their sex, are not safe at work because of their sex, and are fearful, on a daily basis, that they will be further and increasingly victimized because of their sex. They have suffered and will continue suffer significant damages, including but not limited to severe emotional distress that affects their daily lives.

109.    As a result of the Defendants' affirmative conduct and deliberate inaction, some of the Plaintiffs and the putative Class have been forced to transfer out of the Pontiac prison to avoid the ongoing masturbation attacks or have been constructively discharged from IDOC or Wexford entirely.

**Count I**
**42 U.S.C. §1983 – Equal Protection/Sexual Harassment**
**(Defendants Jeffreys, Jackson, Kennedy, Ruskin, Renzi, Sokol, Wexford)**

110.    Plaintiffs repeat and reallege Paragraphs 1 through 109 above as if fully set forth herein.

111.    This Count is brought as a class action pursuant to Fed. R. Civ. P. 23 for the reasons outlined herein.

26

112.    Defendants have acted under color of state law at all times relevant hereto.

113.    Defendants intentionally subjected Plaintiffs and the Class to unequal and discriminatory treatment by requiring Plaintiffs to suffer masturbation at and/or on them, indecent exposure by inmates, and verbally sexually harassing statements and/or gestures during the course of their employment all of which are based on their sex, by:

      a.    knowingly opting not to take appropriate corrective action to prevent these systemic attacks intentionally directed to women,

      b.    knowingly refusing to protect Plaintiffs and the Class from this hostile work environment, despite having ample notice of these attacks since at least 2017 and continuing through the present.

114.    Defendants have acted affirmatively to cause and/or increase the masturbation and indecent exposure attacks perpetrated against female Plaintiffs and the Class through their discriminatory policies and deliberate inaction, including as described above.

115.    The actions of Defendants were done pursuant to one or more of the policies, procedures and *de facto* polices, practices, and/or customs as set forth above that are so pervasive that they carry the force of law.

116.    The Defendants have an express and *de facto* policy, practice, and/or custom of tolerating and acquiescing in indecent exposure, masturbation attacks, and sexual comments and threats by inmates and made toward Plaintiffs and the Class as normal and expected conduct.

117.    Individually and interrelatedly, the above-described express and *de facto* policies, practices, and/or customs proximately resulted in the environment and attitude among inmates that they are free to engage in sexual misconduct against Plaintiffs and the Class, as well as other females in their proximity, without fear of any true consequence.

118.    Individually and interrelatedly, Defendants have an express and *de facto* policy, practice, and/or custom of discouraging and deterring complaints and reports of sexual

27

misconduct by inmates toward female employees.

119.    The sexually and sex-based offensive conduct is severe and pervasive and alters the terms and conditions of Plaintiffs' employment and creates an abusive and unequal working environment.

120.    Male employees are not similarly targeted by male inmates and are not required to work under similar threatening and/or sexually hostile conditions.

121.    Defendants have an express and *de facto* policy, practice, and/or custom of handling complaints by female employees differently regarding inmates' sexual misconduct than complaints by male employees regarding non-sexual misconduct.

122.    The sexual harassment has the effect of unreasonably interfering with the Plaintiffs and the Class's terms and conditions including their ability to perform their duties free from sexual harassment, indecent exposure, and masturbation attacks, and has created and continues to create an intimidating, hostile and offensive working environment for women.

123.    Defendants, despite having the power and authority to take corrective action, have had knowledge of the conduct complained of and intentionally refused and knowingly chose not to take action to terminate or correct the inmates' sexual harassment, penis exposure, and masturbation attacks.

124.    Defendants' actions as alleged above were done pursuant to one or more interrelated policies, *de facto* policies, patterns, practices, and/or customs of official conduct of acquiescence and deliberate indifference to egregious sexual harassment, penis exposure, and masturbation attacks on Plaintiffs and the Class by male inmates.

125.     Said interrelated policies, *de facto* policies, patterns, practices and/or customs, as set forth herein, individually and together, were maintained and implemented with actual

knowledge and deliberate indifference and by requiring Plaintiffs to suffer incidents of sex harassment, indecent penis exposure, and masturbation attacks by inmates during the course of their employment.

126.    Defendants' actions and deliberate inaction were and are the direct and proximate cause of the constitutional violations and injuries suffered and continued to be suffered by the Plaintiffs and the Class.

127.    The actions of the Defendants violate the equal protection rights of Plaintiffs and the Class, including the right to be free from sexual harassment and/or the danger created which increased as a result of conduct by the Defendants, under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

128.    Defendants' actions have caused Plaintiffs and the Class to suffer damages, including but not limited to severe emotional distress, and other compensatory and consequential damages.

129.    Defendants' actions were intentional, willful, and malicious and in reckless disregard for Plaintiffs' rights as secured by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs pray that this Court:

A.  enter an Order certifying this suit as a class action on behalf of the proposed Class;
B.  designate Plaintiffs as representatives of the Class;
C.  designate Plaintiffs' counsel of record as Class Counsel;
D.  enter a judgment against Defendants declaring that Defendants' discriminatory policies and practices violate 42 U.S.C. §1983;
E.  enter a judgment against Defendants requiring that Defendants take effective and permanent remedial action to enjoin and prevent the above-noted practices, including by appointing a monitor to implement policies and practices necessary to stop inmate harassment of female medical and mental health staff at Pontiac prison, and/or any other affirmative relief as may be appropriate or necessary;
F.  enter a declaratory judgment stating that Defendants' deliberate actions and inactions violate the Fourteenth Amendment to the United States Constitution;

29

G.  enter a judgment against Defendants awarding backpay and lost wages and benefits that Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;

H.  enjoin Defendants and their subsidiaries, agents, and employees, representatives, and any and all persons acting in concert with them, engaging in acts that violate Plaintiffs and the putative Class's civil rights under 42 U.S.C. § 1983;

I.  award Plaintiffs and the members of the class actual, statutory, and punitive damages to which they are entitled;

J.  award Plaintiffs and the members of the Class their costs of suit, including reasonable attorneys' fees, as provided by law;

K.  award Plaintiffs and the members of the Class pre- and post-judgment interest as provided by law, from and after the date of service of this Complaint; and

L.  award Plaintiffs and members of the Class such other and further relief as the case may require and the Court may deem just and proper.

## Count II
### Title VII – Sex Discrimination and Hostile Work Environment
### (IDOC and Wexford)

130.    Plaintiffs repeat and reallege Paragraphs 1 through 109 above as if fully set forth here against Defendants IDOC and Wexford.

131.    At all relevant times herein, Defendant IDOC has employed 15 or more employees and is therefore an employer within the meaning 42 U.S.C. § 2000e(b). IDOC is also a proper defendant under Section 1.5(e) of the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1.5(e).

132.    At all relevant times herein, Defendant Wexford has employed 15 or more employees and is therefore an employer within the meaning 42 U.S.C. § 2000e(b).

133.    At all relevant times herein, Defendants IDOC and Wexford have been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h) and have operated as joint employers with respect to Wexford employees.

134.    On May 6, 2019, Plaintiff Heather Kainz filed her class charge of sex discrimination with the EEOC against Defendants IDOC and Wexford.

135.     On April 19, 2019, Plaintiff Sara Bailey filed her class charge of sex discrimination with the EEOC against Defendants IDOC and Wexford and on November 6, 2020 she filed a supplemental and amended charge with the EEOC against Defendants IDOC and Wexford.

136.     On November 22, 2019, Plaintiff Rebecca Buczkowski filed her class charge of sex discrimination with the EEOC against Defendant IDOC.

137.     On November 22, 2019, Plaintiff Sabrina Fox filed her class charge of sex discrimination with the EEOC against Defendant IDOC.

138.     On May 25, 2021 and June 2, 2021, the EEOC and US Department of Justice issued Plaintiff Heather Kainz a Right to Sue letter, respectively.

139.     On June 2, 2021 and June 4, 2021, the US Department of Justice and the EEOC issued Plaintiff Sara Bailey a Right to Sue letter, respectively.

140.     On June 2, 2021, the US Department of Justice issued Plaintiff Rebecca Buczkowski a Right to Sue letter.

141.     On June 2, 2021, the US Department of Justice issued Plaintiff Sabrina Fox a Right to Sue letter.

142.     Defendants intentionally subjected Plaintiffs and the putative Class to unequal and discriminatory treatment because of their sex by creating a hostile working environment, which has been so severe and pervasive as to alter the terms and conditions of their employment, and by knowingly failing and refusing to take prompt and appropriate remedial action to redress those hostile working conditions, all in violation of 42 U.S.C. § 2000e-2.

143.     At all relevant times, each Defendant has possessed both actual and constructive knowledge of the hostile work environment to which Plaintiffs and other members of the

putative Class have been subjected. Despite that knowledge, each of the Defendants has chosen

not to take adequate steps reasonably calculated to curtail the harassment that created the hostile

work environment.

144.   Defendants' acts and omissions constitute a pattern or practice of sex

discrimination against Plaintiffs and the putative Class.

145.   Defendant Wexford discriminated against Plaintiffs Kainz and Bailey and the

putative Class employed by Wexford with malice and/or reckless indifference to their federally

protected rights.

146.   As a direct and proximate result of the Defendants' failures to take adequate

steps reasonably calculated to prevent male inmates' sexual harassment directed against

Plaintiffs and the putative Class, Plaintiffs and the putative Class have been injured and

damaged.

   **WHEREFORE**, Plaintiffs pray that this Court:

A.  enter an Order certifying this suit as a class action on behalf of the proposed
    Class;
B.  designate Plaintiffs as representatives of the Class;
C.  designate Plaintiffs' counsel of record as Class Counsel;
D.  enter a judgment against Defendants declaring that Defendants'
    discriminatory policies and practices violate Title VII of the Civil Rights Act
    of 1964, as amended, 42 U.S.C. § 2000e *et seq.;*
E.  enter a judgment against Defendants requiring that Defendants take effective
    and permanent remedial action to enjoin and prevent the above-noted
    practices, including by appointing a monitor to implement policies and
    practices necessary to stop inmate harassment of female medical and mental
    health staff at the Pontiac prison, and/or any other affirmative relief as may be
    appropriate or necessary;
F.  enter a judgment against Defendants awarding backpay and lost wages and
    benefits that Plaintiffs and the Class have suffered as a result of the unlawful
    employment practices, including pre-judgment interest as permitted by law;
G.  enjoin Defendants and their subsidiaries, agents, and employees,
    representatives, and any and all persons acting in concert with them, engaging
    in acts that violate the rights of Plaintiffs and the putative Class under Title
    VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;

H.  award Plaintiffs and the members of the Class compensatory damages;
I.  award Plaintiffs and the members of the Class punitive damages against Defendant Wexford;
J.  award Plaintiffs and the members of the Class their reasonable attorney's fees and costs;
K.  award Plaintiffs and the members of the Class pre- and post-judgment interest as provided by law; and
L.  award Plaintiffs and members of the Class such other and further relief as the case may require and the Court may deem just and proper.

**Count III**
**Illinois Civil Rights Act (740 ILCS 23/*et seq*.)**
**(Defendant IDOC Only)**

147.    Plaintiffs repeat and reallege Paragraphs 1 through 109 above as if fully set forth herein.

148.    At all times relevant, Defendant IDOC has known that the Plaintiffs and putative Class members were being subjected to indecent exposure and masturbation attacks, threats of sexual violence, and other indecent and sexually offensive conduct by male inmates.

149.    With knowledge of the harassment described herein, Defendant IDOC has nevertheless intentionally failed to take measures reasonably calculated to end or mitigate it.

150.    As a direct and proximate result of Defendant's failures to take appropriate corrective steps to protect Plaintiffs and the putative Class members and address male inmates' sexual harassment of them, all Plaintiffs and putative Class members have suffered damages and continue to suffer damages.

**WHEREFORE**, Plaintiffs pray that this Court:

A.    enter an Order certifying this suit as a class action;
B.    designate Plaintiffs as representatives of the Class;
C.    designate Plaintiffs' counsel of record as Class Counsel;
D.    enter a judgment against Defendant requiring that Defendant take effective and permanent remedial action to enjoin and prevent the above-noted practices, including by appointing a monitor to implement policies and practices necessary to stop inmate harassment of female medical and mental health staff at Pontiac prison, and/or any other affirmative relief as

may be appropriate or necessary;

E.    award Plaintiffs and the members of the Class actual and compensatory damages;

F.    award Plaintiffs and the members of the Class attorneys' fees, costs, and expenses;

G.    award Plaintiffs and the members of the Class pre- and post-judgment interest; and

H.    award Plaintiffs and members of the Class such other and further relief as the case may require and the Court may deem just and proper.

## PLAINTIFFS DEMAND A JURY TRIAL

Plaintiffs request trial by jury on all claims.

Respectfully submitted,

/s/ Robin Potter

/s/ M. Nieves Bolanos
Attorneys for Plaintiffs and the Class

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org

HERTZ SCHRAM PC
Patricia Stamler, Esq.
Steve Weiss, Esq.
Elizabeth C. Thompson, Esq.
Matthew Turchyn, Esq.
1760 S. Telegraph Rd. Suite 300
Bloomfield Hills, IM 48302
(248) 335-5000
pstamler@hertzschram.com
sweiss@hertzschram.com
lthomson@hertzschram.com
mturchyn@hertzschram.com

34

Martin A. Dolan, Esq.
Karen Munoz, Esq.
DOLAN LAW PC
10 South LaSalle Street #3702
Chicago, IL 60603
(312) 676-7600
mdolan@dolanlegal.com
kmunoz@dolanlegal.com